## Johnson *against* Hebard.

Where the case turned on the question whether a certain execution had been paid, by one of the execution debtors; it was proved, among other evidence, that the money was offered to the creditor, and no fact was proved, inconsistent with the supposition of its being accepted; the court submitted the question to the jury, upon the evidence; and the jury found that the execution had been so paid; on a motion for a new trial, for a verdict against evidence, it was held, that the court would not disturb the verdict.

*Windham.*
July, 1839.

Johnson
*v.*
Hebard.

THIS was an action of ejectment, tried at *Brooklyn*, October term, 1838, before *Huntington*, J.

The plaintiff claimed title to the demanded premises, by virtue of the levy of an execution in his favour, against *Gurdon Huntington;* and it was not denied, that he was entitled to recover, unless the defendant, who was in possession, had shewn a better title in *Roger Bingham*, who had had an execution in his favour, against said *Huntington* and *Justin Swift*, levied on the same property. The title of *Bingham* was confessedly prior and superior to that of the plaintiff, unless the following objections, or one of them, to the levy of his execution, were valid and ought to prevail : 1st, that the levy was made without the direction or assent of *Bingham;* 2dly, that the execution was paid in full and satisfied, by *Swift*, before the levy was made.

The evidence which was introduced on these points, was as follows :

*Horatio Webb,* the officer who levied the execution, a witness for the plaintiff, testified, that he received the execution from *Swift;* that previously he had a conversation with *Thomas Gray*, Esq. respecting it, who wished him to call on *Swift;* that *Swift* requested him to levy it ; that after this, and before the levy, he saw *Edwards Clarke*, Esq., who informed him that personal property had been attached ; that *Swift* had sufficient personal estate, which might be taken to satisfy the execution ; that he then saw *Swift*, who told him to proceed and levy the execution on the demanded premises ; that *Swift* and *Gray* both said they would indemnify him and save him from all harm, if he would make the levy ; that he had no interview with *Bingham*, in regard to the levy of the execution. At the close of the examination, he testified, that *Swift* and *Gray* came together, when he received the execution; that he supposed *Swift* gave it to him, but perhaps it was *Gray;* and on re-examination by the plaintiff, he testified, that *Swift* paid him his fees for levying the execution.

*Edwards Clarke*, Esq. a witness for the plaintiff, testified, that he, as attorney for the plaintiff, obtained the plaintiff's execution ; that some time prior to the levy of *Bingham's* execution, he went with the plaintiff to the dwelling-house of *Bingham*, and after some conversation, stated to

him that they had come to purchase his execution, and with money to pay for it, and take an assignment of it; that *Bingham* enquired as to the amount of money they brought, and the kind of bank bills; that *Clarke* told him, if he did not like to take bills, they would procure specie; that *Bingham* replied, that he had had a good deal of talk with *Swift* about taking the execution; that if *Swift* perfected the arrangement which had been proposed between them, he would not assign the execution to the plaintiff; that he would go and see *Swift* on the subject, and if the arrangement was not perfected, he would meet them afterwards at *Clarke's* office, and transfer the execution to the plaintiff; that he saw *Bingham* go into *Swift's* shop, after they parted, and there he remained some time, and afterwards came out; that *Bingham* did not call at his office, to see him at that time, as he had promised to do.

The plaintiff introduced a paper signed by *Swift*, stating that his personal property had been attached on *Bingham's* writ, by direction of *Huntington*. It also appeared, by the return of the officer on *Bingham's* writ, that the personal property of *Swift* had been attached thereby, and by the return on the execution, that he levied it, by direction of the creditor. The officer took a receipt for the property attached.

*Thomas Gray*, Esq., a witness for the defendant, testified, that he brought the suit on which *Bingham's* execution issued; that at the time of *Huntington's* failure, he made it known to *Swift*, supposing he had claims against *Huntington* to be secured; that the debt of *Bingham* was spoken of; that *Swift* furnished him with a copy of the note from which he drew the writ in *Bingham's* favour, and gave the writ to the officer, who attached the demanded premises; that afterwards, and before the sitting of the court at which it was returnable, *Bingham* came to him, and delivered the original note to him, together with other notes, for the purpose of obtaining judgments thereon, which was done; that he gave the execution to the officer, with directions to levy it on the premises, and was with him when it was so levied; that he never agreed to indemnify the officer, nor did he know that *Swift* had agreed so to do.

On his cross-examination, he testified, that he had no conversation with *Bingham* regarding the suit, before its commence-

ment; nor had he any recollection that *Bingham* conversed with him, or gave any direction regarding the levy of the execution; that he presumed he had conversation with *Swift*, regarding the levy of the execution against *Huntington*; that he took no receipt for the execution, and did not charge it to the office; that it was not his habit to do so; that he knew himself how to have the execution levied, without directions from *Bingham*; that he did not recollect whether he charged the writ to any one, or if he did, to whom he charged it, nor a writ which he drew in a former suit to recover the possession of the land, but believed the last-mentioned suit was commenced by some friendly arrangement between himself and *Edwards Clarke*, Esq., with a view to settle the title to the lands, and that the suit was conducted by others.

*Edwards Clarke*, Esq., being again called by the plaintiff, testified, that about the time the executions were to be levied, he inquired of *Thomas Gray*, Esq., whether he proposed to set off *Bingham's* execution on *Huntington's* property; to which *Gray* replied, that *Swift* would give directions regarding it. He added, that the former suit was commenced by an arrangement between him and Mr. *Gray*, as stated by him.

The plaintiff obtained a verdict; and the defendant moved for a new trial, on the ground that the verdict was against the evidence in the cause.

*Goddard* and *Strong*, in support of the motion, contended, 1. That the execution in question was levied by the direction or assent of *Bingham*. In the first place, the return of the officer is decisive on this point, until contradicted by direct and positive proof; a mere want of recollection, is not sufficient. If *Bingham* was present, and knew what was going on, without preventing it, he assented to it; and an assent, in such case, is equivalent to a direction. The direction is for the purpose of guiding the officer in his duty in relation to the creditor, and if he is satisfied that is enough, the debtor has no ground of complaint either way. Secondly, it is clear from the uncontradicted testimony of *Bingham's* attorney, that the execution was levied by his direction; and the direction of the attorney is that of the principal.

2. That the execution had not been paid previous to its being levied. There is no direct evidence of payment; and

it is not probable that *Swift* would pay it, as he had procured the suit to be instituted in order to have the debt satisfied out of *Huntington's* real estate. The arrangement with *Swift* was not proved to be a payment. *Bingham* has never admitted that the debt was paid. *Swift's* paying the officer's fees on the execution, is perfectly consistent with the defendant's claim.

*Windham,*
July, 1839.

Johnson
*v.*
Hebard.

*Child* and *Cleaveland,* jun., contra, contended, that this was not a case calling for the exercise of the high prerogative of the court. They insisted,

1. That there was no evidence that *Bingham,* or his attorney, ever directed the levy of this execution. He never saw the officer on this business. *Gray* acted as the attorney of *Swift,* not of *Bingham;* the officer received the execution from *Swift* or *Gray;* and *Swift* paid him his fees. *Swift* had an object in his interference, which was, to get *Huntington's* real estate away from his creditors, and liberate his own personal property.

2. That the jury were authorized, by the evidence, to find that the execution was satisfied. The money was offered; and no satisfactory reason appears for its being refused. The conduct of the parties shews that the debt was paid. *Bingham* did not any longer trouble himself about it. He spoke of an " arrangement ;" and it required only ordinary sagacity in the jury to discover its nature. If the jury had found otherwise than as they did, it might be claimed, much more plausibly, that the verdict was against the weight of evidence.

HUNTINGTON, J. The evidence reported to us establishes the fact that an arrangement was perfected between *Swift* and *Bingham,* by which the entire controul of the execution in favour of *Bingham,* was given to *Swift.* The nature and terms of that arrangement did not appear, by any direct testimony, but were to be ascertained from the facts and circumstances proved at the trial, which were left to the jury, with instructions to return a verdict for the plaintiff, if they should find that this execution had been paid in full, and satisfied by *Swift,* before the levy of the plaintiff's execution was made. They did so find; and although we might perhaps have come to a different conclusion, we cannot say that the verdict is without

*Windham,*
*July, 1839.*

Johnson
*v.*
Hebard.

evidence, or so clearly against the weight of evidence as to justify us in sending the cause to another jury. The point in dispute was left in some doubt upon the testimony. There was no fact proved inconsistent with the supposition, that *Swift*, who was one of the debtor's in the execution, and legally bound to pay it, did in fact pay it. The jury might have inferred, that *Bingham*, who had entire security for his debt, and to whom an offer had been made by the plaintiff, to pay the execution in money, would not conclude an arrangement with *Swift*, less beneficial than actual payment; and consequently, that the one which was completed, was of that character. The whole case was before them, with the advantage derived from the examination of the witnesses in court. It was their peculiar province to decide upon the weight of evidence, and to draw from it such inferences as they deemed to be just. This they have done; and we do not feel ourselves, as a court of law, and acting according to the rules by which courts of law are usually governed in similar cases, at liberty to disturb their verdict.

A new trial is, therefore, refused.

In this opinion the other Judges concurred.

New trial not to be granted.